RARE May it please the court. I'm Charles Tabor on behalf of HDRE. Your honors, we're here today on a very narrow legal issue. Survival. What survives the novation of a contract or an obligation in Louisiana? Under Louisiana law, a novation is complete. So I am espousing a complete novation theory. You can't cherry pick pieces out of the old obligation to bring forward in the new. My opponents are bringing forth a partial novation argument and I believe that that is legally incorrect. Now your honors, with regard to facts, there aren't many but they're very important in this case. My client was originally approached by RARE and asked to purchase a piece of property. RARE then wanted to lease that property from my client. So my client gets a purchase agreement and executes a lease with RARE. The lease has an attorney's fee provision. Subsequently down the road, RARE's business model changes and it wants to purchase the property instead of lease. My client executes an assignment of the purchase agreement. The assignment does not mention the lease and does not contain an attorney's fee provision. This entire litigation has basically focused on whether or not the assignment could act to complete. In looking at the, and ultimately RARE was correct, the novation did occur. But in looking at the district court's opinion and where I believe the district court committed its legal error, it started its analysis on third base so to speak. Question one after a novation is not what does the novated agreement say regarding going forward. Question one after a novation is what can survive that novation. And your honors, an attorney's fee provision or any accessory or correlative rights cannot survive the crucible of novation. Under Louisiana law, novation is the extinguishment of an existing obligation and the substitution of a new obligation in its place. And that's a two-pronged test. You have to get rid of the old and bring in the new. The district court and RARE don't look at the new. What is the assignment? What does the assignment say that we replace the old obligation with? The assignment has no attorney's fee provision. So you can't cobble together the new assignment with the good pieces that you want out of the old agreement. And that's kind of the issue here today. And there was a point yesterday where I had a realization that dawned on me. Louisiana has been in this union for a long time. It's been a state for a long time. The district court. Peculiar as it may be. Sir? Peculiar as it may be. Yes sir, and the civil law is a peculiar beast to say the least. But in the 200 some odd years that Louisiana has been a state, there is not a single case that supports this partial novation theory. And if you look at the memorandum ruling by the district court and RARE's opposition brief, they do not. You say it's a factual question, right? Sir? It's a factual question? No, your honor. This is a completely legal issue. The factual issue is novation itself. And the jury found there was a novation. The legal issue then becomes what survives that novation and what is the effect. So we're solely on a legal issue today. You don't think it makes any difference what the first contract says as to whether this assignment of title basis is a novation? Your honor, no sir. I don't think that it has any difference what the original contract says with regard to how it's applied after the novation. It certainly contemplated things in addition to what the lease. It was called a lease, but it was more than a lease. Sure, your honor. And it did contemplate things, but if you look close at those lease provisions, especially the provisions that the court cite, it speaks of termination. What happens after termination of the lease? The lease was not terminated in this case. It was extinguished, which is a different legal concept in Louisiana. So you can't look at the termination provisions in the lease to see how it's applied. And that's my complaint as far as the error of the district court. The district court looked at the lease. As I understand it, nobody contests that novation occurred. Correct, your honor. And if novation occurred, then it's a matter of law as to what happened. And the Louisiana courts have been clear, it seems to me, that whenever you consider novation, you consider the obligation as a whole and not its separate parts. Correct. That's exactly what the cases in Louisiana have held. Absolutely correct. And as I would say, that is a very friendly question to you. Yes, sir, your honor. And that is why the Langhoff case is so important in this case, which is a case I will point out that the district court ignored in its decision and that nobody has addressed directly on its head. Judge Weiner in Langhoff comes in and looks at a novation and says, and I quote, we note at the outset that under Louisiana law, the Amoco lease constituted an obligation, specifically a contractual obligation or contract. Because in Louisiana, there's bundles. You have the overarching obligation and all the accessory rights. It's like a necklace of pearls. You have all of these things, but they're tied together by the string. And when the string is cut off, there's a cutting of the string and everything else falls with it. They cannot be maintained together without it. I try to know the metaphor of the string of pearls, but I get the point. Yes, your honor. And so, and this is tied into Louisiana's notion of cause. You know, as you say, we are a peculiar state. We don't have consideration in Louisiana. We have cause. And the civil code tells us that cause is the reason why we enter into obligations. Well, I would submit to the court that the cause of the lease is the obligation to lease itself. And without that obligation, surely the parties would not have entered into an obligation to provide insurance on property if they weren't leasing it together or to pay rent if they weren't leasing it together. So in Louisiana, when the cause fails, the contract fails. So when the jury held that the obligation to lease terminated, the lease itself terminated and nothing remained. And I'd like to point this court to the district court's opinion and its memorandum ruling. It said something or didn't follow up on the statement. On page six of the memorandum opinion, the court of Professor Levasseur to say the new obligation, which emerges from the juridical act of novation is free of all the rights of action and exceptions which were attached to the former original obligation. If anything survives, it can't go forward. And that's civil code article 1881. If there is any significant performance remaining, there is no novation. Well, we know in this case from the jury there was a novation, inter alia, there was no significant performance left. And I would say that $750,000 in attorney's fees is a significant obligation, Your Honor. And I'm sure my client would agree with that. Don't we also know from the law of the case that there was a novation because the panel said so? Correct. Correct. So there was and that has been affirmed by this court. So there is a novation. There's absolutely a novation here. Absolutely a novation, Your Honor, 100 percent without a doubt. And, you know, Rare knows the law as well as we do. And they argued very vigorously early on for the effect of that law. I would quote the court to their original answer in this case, where they state, Rare admits that it is claimed that the lease was novated, terminated, rendered impossible, or was otherwise rendered null and void and of no execution of the agreement. That's their words, not mine, Your Honor. So if the lease doesn't provide for the fees, there's no other legal basis under Louisiana law to provide for them, is that correct? That is correct, Your Honor. Under Louisiana, if there is not a contract or a law on point that provides for attorney's fees, they're unavailable. So in this case, without a lease, they are unavailable. So you would like us to reverse and render that attorney's fees are not available because they're not provided for by the agreement? Correct, Your Honor. As novated by the assignment, there is no longer an attorney's fee provision to survive. That obligation has died. If for some reason we believe that it did survive and against all that you've argued, do you have a real argument on the amount of the attorney's fees? Your Honor, our issue on the amount of the attorney's fees, and to put it in perspective, for every dollar we spent on this case, Rare spent four dollars. So at the end of the day, our attorney's fees for this case were about $250,000 and Rare's was a million. And so when the court ordered fees were allowed and sent over the billings, the billings are huge and almost indecipherable. And so my argument before the magistrate judge was, Your Honor, let's look at this from an overarching basis. This was a contentious case, but it was no different than regular federal litigation. We had pleadings, a rounds of motion to dismiss, discovery, which involved about eight to ten depositions, a round of motion for summary judgment, which came up to this court and was reversed, and then we tried the case. This case took four days, including selection of the jury, and it was a jury trial. Out of that, we have a million dollars in fees that Rare requested. The magistrate looks at that and says, I'm going to cut a quarter of a million dollars off these fees just on reasonableness. And I believe he was 100% correct to do that. Where I think the magistrate made his mistake was he just did not go far enough. I think a larger discount would be due. But that's my argument. He applied the correct factors, made a judgment call. You really can't do much with that, can you? That's a tough argument, Your Honor. It is within the discretion of the magistrate and the court to make that ruling. And while I think he should have went further, and I would ask this court to do so, he made his decision based on the factors. Has this case been going five years? Has it made six years yet? Countless. I believe it has made six years, Your Honor, but there's important things to consider in that. Can we get through it? Maybe seven? Yes, Your Honor. But very important things to consider in that. We've had great gaps of no activity. Initial motions, you wait for those rulings six, seven months. We had the motion for summary judgment. We had the big gap after the Fifth Circuit, you know, waiting for the Fifth Circuit to render. It renders, and then we have a gap, and then we have—so you're looking at— You're saying we're kind of slow? No, Your Honor, that's not what I'm saying. But what you do have is small areas of intense activity with gaps in between. As all litigation is, it's not a continuous meal, so to speak. But overall, Your Honor, the main thing to get out of this is Louisiana is so tied up in this notion of cause. And if you look at Article 1881 of the Civil Code, novation is generally under Article 1879, the extinguishment of an existing obligation for the substitution of a new one. This is particularly an objective novation. Under 1881, objective novation talks about the substitution of an obligation or the substitution of a cause. And that comes back in repeatedly in Louisiana law in the Civil Code, cause. Why were these parties together to begin with? To lease this property. When that obligation to lease dies, the lease itself dies with it. You can only look to the assignment going forward. And if there are no questions from the Court, I would reserve my remaining time for rebuttal. Okay, thank you very much. We'll hear from you, Mr. Caput, and Mr. Shannon. Thank you, Your Honor. Nick Chenine, on behalf of the Applee Rare, together with my co-counsel Brian Bennett, we believe that the District Court fully properly applied Louisiana law, and we are happy to explain that to this Court in rebuttal. Novation occurred, period. This Court ruled that very clearly. The judge below properly applied the fact that novation occurred. No one contradicts that. But if novation is a string of pearls, the clause about attorney's fees was a matching ring that's separate from those pearls. It is an independent— We need to get away from these metaphors. Happy to move away from that. But the point is, as Judge Reveley pointed out in his questioning, this was a lease, but it was more than a lease. There were a number of independent clauses, and the clause that we're talking about here, 2616, the right to attorney's fees, was clearly a conjunctive obligation, not a correlative obligation. Are you making this up out of whole cloth, or have we got authority for that? No, no. The Langhoff case that was discussed, every obligation that they talked about being tied— The Langhoff case, at least the way I understand it, makes clear that your obligation in the terms of a novation is a term of art, and an obligation includes the entire aspect of the relationship between the parties, and whenever it's novated, then that relationship of the parties with respect to the thing that has been novated is over with. It's gone. And that is correct, but— Well, and specifically, they say, you do not take it apart and consider it duty by duty, part by part. It is the obligation that is novated, and the obligation here is the entirety of the lease, and that's the way I would read it. Why am I wrong? And the District Judge clearly found a different conclusion, but she found a different conclusion based upon the law of Louisiana, based upon application of a number of factors, Your Honor, upon looking at the plain language of the contract, which is supposed to control, upon looking at the Langhoff case— The contract survive a novation. If it novated, it novated. But what they novated, there is no such thing as a contract as one piece in Louisiana. It's all obligations, and one substitutes a new obligation for an old obligation. Exactly. In the case of a lease, and we are talking about the exact same thing, Your Honor, in the case of a lease— What does obligation mean? That's the question. The obligation is defined. The Code Section 1765, it's an exchange of a duty or an obligation from one party to another. In this case, we're not talking about an entire contract with a completely separate attorney fee clause. We're talking about the duties are pertinent to, I'm going to pay you money for this land, and you're going to let me use it for a period of time. There are a number of correlative duties that go with that, and that's what the Langhoff decision discussed, that you've got the right to collect rent, the lessor's duty to deliver property, the lessor's duty to maintain property, the lessor's duty to collect to pay the rent. And it says all of that. Then it concludes, though, does it not, that all of that is part of the obligation that has been novated. That's correct, because those are, I know you don't like his analogy, but I do. Those are pearls connected to each other. This attorney fee provision, it makes no sense for it to be tied to it. We are here on a final order. This is inconsistent with the treatise, though, in Louisiana, isn't it? And using your pearls and your ring, it says the extinction of the original obligation also extinguishes its accessories. So the ring is an accessory, and it's extinguished too, because including security given for the performance of the seller's right of dissolution of a contract of sale for nonpayment of price. It extinguishes everything, the things that are central and the things that are tangential. But that's not what the rest of Louisiana law goes to. What case holds for you that this obligation remained? There is no case cited by either side that squarely addresses the issue of an attorney fee clause that rides separately and distinct. But when you look at the nature of final orders. What clause rides separately and distinct in any context? Well, of course, in this contract, and that's the problem with Louisiana law when you're trying to talk about contracts. That's why it's not one thing, because all things ride separately under Louisiana law. But there are things that are tied to each other. An environmental clause regarding the land is clearly tied. And here's where we get to. The Louisiana law, Civil Code 2046, talks about when the words of a contract are clear and lead to no absurd consequences, we are to employ the plain meaning of those provisions. Here, the district court properly found that if we were to apply the right to attorney's fees, even though the contract has a clear severability provision, even though it says that that right to attorney's fees is in any suit or action by either parties, for any reason arising out of the lease, the prevailing party shall have the right to recover. If you interpret it the way that is being proposed by RARE, that would lead to an absurd consequence, because it means heads they win, tails we lose. They would be the only side that would ever be allowed to collect attorney's provision, because great job. As Judge Riebley pointed out, this litigation has been going on for seven years. And it really, six and a half years at this point, by the time this case is done, it will have hit its seventh year. Seven years of litigation, and yet they get to say, because we attempted to enforce an agreement that was exchanged for another agreement, and you prove that successfully, you don't get your fees. If they had proven their case to the first question, instead of yes to that first question, they do get their attorney's fees. It changes what is a mutual prevailing party fee agreement into a unilateral one-way fee agreement, and that is an absurd consequence. That's exactly what the trial court correctly found. She utilized the civil code of Louisiana to reach that conclusion, and we believe that this court should look at the... I mean, you have a contract, a lease contract... Yes, Your Honor. That specifically says that any litigation arising from this lease shall get attorney's fees. The prevailing party should get attorney's fees. You sued on the lease. They sued us on the lease. They sued you on the lease. Yes, and we properly defended it and beat them over seven years. And consequently, the lease that you're suing on, or that is sued on, says that you should get attorney's fees, except you asked the jury about whether it was going to be novated, and the jury said it's novated, and when it's novated, it's all what does novation mean. Sure, and if, Your Honor, if we can turn to what the jury answered, the single question, the only question before them, has RARE proven by a preponderance of the evidence that both RARE and HDRE clearly, unequivocally, intended to substitute the assignment of HRA's obligation to purchase for RARE's obligation to lease, little L on that lease, under the big L lease agreement, so that RARE's obligation to lease was no longer enforceable. It's not that the contract never existed, and this is actually an important point under Louisiana law. There is a difference between a null contract, a contract that was immoral or illegitimate, signed by a minor that could have never been enforced, a contract like that that's null from the beginning, it never existed, that then we would concede, Your Honor, that that contract would not, you couldn't enforce a provision from a contract that never existed, but a contract that did exist, absolutely existed, before this part of the provision got novated, that that's a real contract that had a basis for this attorney fee clause to exist, so that's why when you look at it from that bigger perspective, Your Honor, we believe this contract, that part of this contract survives. It was severable, it's not pertinent, it's conjunctive, not correlative to the obligation to lease. I mean, it probably makes better sense, but it doesn't, it just, in my mind, it just doesn't fit with the concept of novation as defined by the Louisiana cases. What about this theory of novation? Does it, how many states recognize, do you know offhand, looking into this, how predominant that theory is that it would be so? I can say this, Your Honor, I mean, novation exists in various forms in most state jurisdictions. Louisiana's clearly got its unique, unique aspects to it. What is the majority rule on this issue, though, even though we're, there's no Louisiana case saying here's the way that it works on a novation of a lease for an attorney fee clause that had a severability provision. The majority rule is that when a contract is found unenforceable, the defendant's proving that it was unenforceable does not vitiate the ancillary attorney fee clause. That is the majority rule. Our brief actually contained, I think, 20 different states that explained through that. So, and the reason is the basic fundamental fairness of what that provision is. That attorney fee provision is supposed to be a mutual prevailing party provision and it undercuts it if a defendant, and normally the defendant on those situations are going to be a consumer fighting off, you know, a large entity and that consumer, you know, says no, you can't enforce this on me because, you know, that, that's whatever the provision was doesn't apply. And they win. And then to have a court turn around and say, yeah, but because you won and defeated the enforceability of the contract, now you have no enforceable contract and you don't get your attorney's fees, whereas the creditor absolutely would have gotten their attorney's fees if they had crushed you. That, that's where the, the inherent unfairness would come in. There are other legal obligations that might apply in those contexts. Consumers. There may be some, but it doesn't change the fact that you have what would be an absurd consequence. Are you stopped from arguing what you've argued to us today, that, that the jury verdict is really only a narrow thing and it's not the entire lease that's motivated based upon your arguments at the summary judgment stage where you said it was the entirety and it's all extinguished and we could go on and on? I'm happy to address that. And the answer is no, Your Honor. We are not a stop from saying that. And for a number of reasons. One is purely procedural. That there is no ruling by the court below for you to find was an abuse of discretion on the judicial estoppel argument because it wasn't raised to the court below at any point on this issue. But I'm asking you, are you free to argue that to us today when you've taken a contrary position below? And the answer, Your Honor, is yes. And the reason why is because we didn't take a contrary opinion that was the converse of what we're arguing now. This is a refinement of that. In other words, we weren't arguing at one point the sky is blue and now we're saying the sky is black. That instead we're saying the sky was blue and now we're saying, okay, you know, it's not the entire sky that's blue. It's this part of the sky that's blue. We are refining. I mean, no judge relied upon that argument. But whether or not you can ethically argue it is independent on whether whether it's whether it's the judges argued it. No, I mean, it's because you said the lease with the capital L has been previously extinguished. And Your Honor, we admit that I've got my Litvinoff book there that we after receiving this court's first ruling on what does now that we're up on a rare three, that on rare one, when we received that first ruling, we read it and we tried to understand it and we tried to understand the Louisiana law that ties to it. And now we are clearer on it and we have clarified our position. But the important thing is, as Judge Jolly notes, no judge found in our favor on a provision that became moot. That motion was never ruled on. What we can't understand is if that was going to be their argument, why they didn't raise it to the judge when we did file our proper and timely motion for attorneys fees now. Why they didn't raise it on a motion for rehearing to Judge Jolly, to the judge foot below. You know, that simply is not, it's not an ethical problem for me, Your Honor, because I believe that our argument is consistent with that, but it refines what we have argued. It clarifies that under Louisiana law and Litvinoff and the other scholar that got referenced that these provisions are conjunctive, not correlative, and as a result, they do survive. He said it right at the beginning, this is about survival. And this clause needs to survive because to come to a contrary conclusion is to allow for an absurd consequence. It would create a poor precedent because it would allow for creditors or other entities to know that they can, with impunity, have mutual, bilateral, prevailing party agreements that are in fact not mutual and not bilateral because the only defenses that are available to the defendant will undercut their ability to ever collect the fees to which the creditor would be entitled. That doesn't make sense. It can't be the law and it shouldn't be the law. So we believe that a proper reading of what is admittedly in Louisiana law has its twists and turns. But she properly applied the Louisiana law. She went through the code provisions to justify her conclusion. We tend to concur, Your Honor. And finally, to hit the last of the points, that we do believe that the court's conclusion regarding the amount of attorney's fees was clearly within the ample discretion of the court. The court cut over 25% of our fees. There was no objection raised after the magistrate ruled before the judge was asked to rule upon that decision. This has been seven years of hard fought litigation, well fought litigation. And it's a meritorious award that should be affirmed by this court. Well, thank you very much. Thank you, Your Honors. Sir. Thank you, Mr. Shaw. David? Your Honors, three quick points. The absurd result, I would argue that the opposite's true, that it's absurd to allow somebody to extinguish a lease and then get the fees under it. And one thing that opposing counsel Gloss is over is, yes, Your Honor? You sued. You were the plaintiff. Well, we were the plaintiffs in this action, Your Honor. They sued in Florida and we ended up combining them in this case. But, I mean, you were suing, you were saying that the lease was in effect.  I was. And so you sued on the lease. I did sue on the lease. And the lease itself says that attorney's fees are provided. Correct, Your Honor. And then you sue on the lease and with a provision for attorney's fees, and then the attorney's fees do not apply because the thing is novated. There's a certain absurdity about that. Well, Your Honor, only if you don't take- But it's the law. In the second part of that analysis, though, Rare's only defense wasn't novation. If the jury would have come back and said the contract's not novated, I then have to show that that lease is enforceable. And the rest of that jury verdict forum was all about their defenses on the substance of the lease. I'm just saying, you sued on a lease that said anybody that sues on this lease and loses owes attorney's fees. And you sued on the lease and lost, but you don't owe attorney's fees. Well, Your Honor, and it goes back- You know, that's just the way I said it without any nuances to it is absurd. But they can pick what defenses they want, right? That's correct. And in the law, Your Honor- And they chose that defense. And they may rue the day they chose that defense, but they chose that defense. We, as litigators, make decisions every day that have legal consequences, and that is the legal consequence of the fight. They won their argument. I thought they were wrong. The jury disagreed with me. But at the end of the day, that contract no longer exists. I assume they had others in their basket that they could have emphasized with the jury. Oh, sure. And their arguments were we didn't provide the insurance, we didn't do all these lease things, but we never got past the threshold question. So, therefore, none of that became applicable. But had we gone forward and the jury said the lease exists, but you breached it, I owe attorney's fees then because there's a lease in effect that I breached. So, it isn't this all-or-nothing game. It's their defense that they picked. I didn't say it wasn't complicated. I just said on a very simple statement of the case, it produces an absurd result. Sure, Your Honor. And the key of this thing is to go back to what Judge Elrod said a moment ago citing the treatise. When the main obligation goes away, all the accessory obligations. That's the rule in Louisiana, and I understand that Rare does not like the effect of that rule, but that is the rule in Louisiana. There's not a case in 200 years that holds otherwise. I'm not going to clean out the Code Seville from absurdity, sorry. Well, it's funny. Professor Litvinoff taught me obligations and contracts, and I told him one day that one of the, not realizing that he wrote it, that one of the code articles was convoluted. And he said, what is convoluted about it, and just got on me really hard. But you're right, I mean, we're bringing a law forward that came through Justinian's Code, through the Code of Orleans, the Projet of 1812, 1870. There's a whole lot of history there, and that has a tendency to complicate things. But you would think that in the whole history of the civil law, there would be at least one case that lets them divide obligations in the lease. Your Honor, that case does not exist. And my last point, opposing counsel cites a lot of cases from other jurisdictions up in the Northwest that are unenforceability cases. This lease was not found unenforceable, it was found extinguished. Those cases have no application here, they didn't deal with innovation. Thank you guys for your time. Sir. Thank you, Mr. Tabor. Move on to the